**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE NORTHERN DISTRICT OF NEW YORK**
_____

THE UNITED STATES OF AMERICA

                                              **NOTICE OF MOTION**
                                              **Docket No. 18-CR-427**

-vs-

TROY JACKSON,

                            Defendant

_____

PLEASE TAKE NOTICE, that upon the affirmation of DAVID R. MORABITO, attorney

for the above-named Defendant, and upon the Indictment and all prior papers and

proceedings had herein, the defendant will move this Court for relief pursuant to the

following motions:

**MOTION FOR DISCOVERY AND INSPECTION UNDER**
**RULES 12 AND 16 OF THE FEDERAL RULES OF**
**CRIMINAL PROCEDURE**

**MOTION FOR REQUEST FOR BILL OF PARTICULARS**
**PURSUANT TO RULE 7 (f) OF THE FEDERAL RULES**
**OF CRIMINAL PROCEDURE**

**MOTION FOR DISCLOSURE OF BRADY MATERIAL**

**MOTION FOR DISCLOSURE OF WITNESSES**
**STATEMENTS AND PRODUCTION OF JENCKS**
**ACT MATERIALS**

**DISCLOSURE OF EVIDENCE PURSUANT TO FEDERAL**
**RULES OF EVIDENCE §§ 404 (b), 608 and 609**

**MOTION FOR PRESERVATION OF ROUGH NOTES AND**
**REQUEST FOR IN-CAMERA REVIEW**

**MOTION FOR DISCLOSURE OF INFORMANT**
**INFORMATION**

**MOTION FOR SEVERANCE OF DEFENDANTS**

**MOTION TO JOIN IN MOTIONS MADE BY OTHER COUNSEL**

**MOTION TO SUPPRESS STATEMENTS TAKEN IN VIOLATION OF DEFENDANT'S FIFTH AND SIXTH AMENDMENT RIGHTS**

**MOTION FOR AUDIBILITY HEARING**

**MOTION FOR CONSPIRACY/JAMES HEARING**

**MOTION TO SUPPRESS IDENTIFICATION**

**IN CAMERA REVIEW OF PRE-SENTENCE REPORT OF GOVERNMENT WITNESSES**

**MOTION TO SUPPRESS EVIDENCE OF ILLEGAL SEARCH**

**MOTION TO SUPPRESS EVIDENCE OF WIRETAP/ ELECTRONIC SURVEILLANCE**

**MOTION TO UNSEAL REDACTED RECORD, STATEMENTS, REPORTS, ETC**

**MOTION TO RESERVE RIGHT TO BRING FURTHER MOTIONS**

Dated: May 9, 2019


Yours, etc.

/S/ David R. Morabito, Esq.
_____
DAVID R. MORABITO, ESQ.
Attorney for the Defendant
Post Office Box 187
117 West Commercial Street
East Rochester, NY 14445-0187
(585) 586-5770



TO:     Clerk, United States District Court
        Northern District of New York
        100 South Clinton Street
        Syracuse, NY 13261



ATTN:  Nicolas Commandeur, Esq.
        United States Assistant Attorney
        100 South Clinton Street
        Syracuse, NY 13261

**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE NORTHERN DISTRICT OF NEW YORK**
_____

THE UNITED STATES OF AMERICA

                 -vs-                                            **AFFIDAVIT**
                                                       **DOCKET NO.: 18-CR-427**

TROY JACKSON,
                            Defendant
_____

DAVID R. MORABITO, ESQ., under penalties of perjury pursuant to 28 U.S.C. § 1746

states as follows:

1.      I am an attorney licensed to practice in the State of New York and the United

States District Court for the Northern District of New York, I represent the Defendant in

the above-captioned matter, and I make the factual allegations contained herein in

support of the relief sought in the annexed Notice of Motion.

2.      Defendant TROY JACKSON is charged by the above-numbered indictment with

a one (1) count Narcotics Conspiracy and one (1) count of a Forfeiture Allegation. Count

One of the said indictment charges a violation of Title 21 USC § 841(b)(1)(C). The

Forfeiture Allegation raises forfeiture of United States Currency and/or Request of a

Money Judgement. Defendant Jackson has been arraigned and entered a plea of Not

Guilty to said charge and forfeiture allegation.

3.      The sources of the information set forth in this affidavit and the grounds for my

belief are conversations between myself and the Defendant, examination of the various

papers filed in connection with this proceeding, examination of the voluntary discovery

previously provided by the Government, and my independent investigation of the facts

giving rise to the above-mentioned charge and forfeiture allegation.  It is respectfully requested that the Defendant have a right to file further motions if it is necessary to review any additional legal issues other than what has been set forth below.

## DISCOVERY & INSPECTION UNDER RULES 12 AND 16
## OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

1. As stated, the Defendant has received extensive discovery when the Government provided voluntary discovery to Defendant Jackson. However, Defendant is requesting the below stated of said records, documents and reports if they exist and have not been turned over through voluntary discovery.  Further, Defendant has had difficulty in reviewing multiple CDs previously supplied and will communicate with the Government by separate cover in obtaining the documents/videos.

2. Defendant Jackson requests the following if said discovery has not already been supplied:

  a. Rule 16(a)(1)(A) involving Statements of Defendant;

  b. Rule 16(a)(1)(B) involving Defendant's Prior Record;

  c. Rule 16(a)(1)(C) involving Documents and Tangible Objects;

  d. The evidence is material to the preparation of the defense;

  e. The evidence is likely to be used by the Government as evidence in chief at the trial;

  f. Notice by the Government of the intention to use evidence;

  g. The evidence was obtained from or belonged to the Defendant;

  h. Rule 16(a)(1)(D) involving reports of examinations and tests  and

  i. Rule 16(a)(1)(E) involving expert witnesses.

3. It is requested under Rule 12(d) of the Federal Rules of Criminal Procedure, **Notice by the Government of the Intention to Use Evidence**, that Defendant Jackson be provided with the above-stated in order to afford the defense with an

opportunity to adequately review the hereinstated prior to trial.

## REQUEST FOR BILL OF PARTICULARS PURSUANT
## TO RULE 7(f) OF THE FEDERAL RULES OF
## CRIMINAL PROCEDURE

1.  Defendant Jackson requests an order pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure requiring the Government to provide a written Bill of Particulars as requested herein.

2. The requested Bill of Particulars is necessary to enable the Defendant: (1) to prepare for trial; (2) to prevent unfair surprise at the time of trial; and (3) to determine whether certain defenses are available.  *United States v. G.A.F. Corporation*, 928 F.2d 1253 (2d Cir. 1991); *United States v. Davidoff*, 845 F.2d 1151 (2d Cir. 1988).

3. The Defendant, Troy Jackson, seeks the following particularization:

    a.  The names of all persons whom the Government will claim at trial were unindicted co-conspirators and whether they are in federal custody or protective custody;

    b.  Whether or not any individual present during the commission of the alleged overt act(s) were acting for the Government, and the name(s) of said individuals, if they exist;

    c.  The names, to the extent known, of any persons present when the overt act(s) allegedly took place;

    d.  The date, to the extent known, when Defendant Troy Jackson joined the conspiracy;

    e.  The quantity of contraband  distributed and possessed by Defendant Jackson during the course of the alleged conspiracy to the extent that this information will be presented by the Government at trial;

    f.  Identification of individuals described as "others" in the Indictment who are known to the Government;

    g.  The name and addresses of all prosecution witnesses; and

    h.  An itemized description of any property taken from the Defendant during the investigation of the alleged offense(s) and the arrest of Mr.Jackson.

4. This Court has "very broad discretion" to direct the Government to provide a Bill of Particulars, including the names and addresses of potential witnesses and when and where they heard incriminating statements, when the information is necessary or useful in preparing a defense. *Will v. United States*, 389 U.S. 90 (1967).

5. The defense requests particularization as to how much contraband Defendant allegedly conspired to possess. This information is necessary to allow the defense to meet any statutory mandatory minimum claims in the event of conviction.


## BRADY MATERIAL

1.     The Defendant moves for an order, pursuant to *Brady* and its progeny, compelling the Government to disclose all potentially favorable evidence having a reasonable probability to affect the outcome of the proceedings. It is further requested that this Court direct the Government to disclose such information as soon as possible.

2.     The requests made hereafter are discoverable under the *Brady* doctrine whether the information sought is exculpatory (*i.e.*, goes to guilt or innocence) or simply useful for impeachment (*i.e.*, has the potential to alter the jury's assessment of the credibility of a significant prosecution witness).

3.     Furthermore, ". . . the Government has a duty and responsibility to learn of any favorable evidence known to the law enforcement. As such, the Government is presumed to have knowledge of all information gathered in connection with his office's

investigation of the case.  See *Giglio v. United States*, 405 U.S. 150, 154 (1972).

4.     Pursuant to the hereinstated, Defendant Jackson requests production and disclosure of all materials potentially favorable to him, under the *Brady* doctrine, including, but not limited to, the following:

a. Evidence which is exculpatory in nature, including but not limited to information, documents, materials or any other evidence which is even only arguably potentially favorable to the defendant (*see United States v. Arnold*, 117 F.3d 1308 (11th Cir. 1997); *United States v. Mitchell*, 613 F.2d 779 (10th Cir. 1980); *United States v. Diggs*, 801 F. Supp. 441 (D. Kan. 1992));

b. Evidence that a government witness has been told that he will be prosecuted if he does not implicate the defendant (*see United States v. Scheer*, 168 F.3d 445 (11th Cir. 1999)) or a defense witness has been told that he will be prosecuted if he testifies or otherwise assists the defendant (*see United States v. Golding*, 168 F.3d 700 (4th Cir. 1999));

c. Any other evidence which may be used to impeach the credibility of a government witness, including but not limited to:

  i. plea agreements, promises of immunity, leniency, financial assistance or other forms of assistance to any witness (*see United States v. Bagley*, 473 U.S. 667 (1985); *Giglio v. United States*, 405 U.S. 150 (1972); *United States v. Taylor*, 707 F. Supp. 696, 703 (S.D.N.Y. 1989); *United States v. Biaggi*, 675 F. Supp. 790, 812 (S.D.N.Y. 1987));

  ii. prior criminal record(s) or other acts of misconduct of any witness (*see   United States v. DiLorenzo*, 1995 W.L. 169003, *6 (S.D.N.Y. 1995); *United States v. Marshak*, 364 F. Supp. 1005, 1007 (S.D.N.Y. 1973));

  iii. evidence tending to show that any government witness has previously committed perjury (*see United States v. Vozzella*, 124 F.3d 389 (2d Cir. 1997));

  iv. prior inconsistent statements of any government witness (*see United States v. Strother*, 49 F.3d 869 (2d Cir. 1995); *United States v. Peters*, 732 F.2d 1004 (1st Cir. 1984));

  v. confidential files of any government informant(s), insofar as said files contain impeachment material;

  vi. "rap" sheets of any government witness, including the criminal records of informant(s);

vii. prior testimony of any government witness which contains inconsistent statements or evidence of a witness's prior bad acts (*Kyles v. Whitley*, 514 U.S. 419 (1995));

viii.  evidence that any government witness has a history of drug or alcohol abuse (*see Taylor*, 707 F. Supp. at 703; *United States v. Boyd*, 55 F.3d 239 (7th Cir. 1995)), including the results of drug tests conducted during the period of time the witness/informant was working for the government;

ix. federal, state or local pre-sentence reports done in connection with any governmental witness (*see United States v. Moore*, 949 F.2d 68, 72 (2d Cir. 1991));

x.  all other material which tends to impeach any government witness (*see United States v. Bagley*, 473 U.S. 667 (1985); *Giglio v. United States*, 405 U.S. 150 (1972)).

d. Favorable evidence, which, when taken as a whole, could reasonably put the case in a different light by looking at the cumulative effect, rather than item by item.  *(Kyles v. Whitley*, 514 U.S. 419 (1995));

e. Any other evidence tending to be favorable to the defense which may result in a different outcome of these proceedings, regardless of any specific request made herein. (*see United States v. Bagley*, 473 U.S. 667).

## DISCLOSURE OF
## WITNESSES' STATEMENTS

1.    The Defendant moves for disclosure of witnesses' statements pursuant to 18

U.S.C. Section 3500 ("*Jencks Act*") and Rule 26.2 of the Federal Rules of Criminal

Procedure. Statutorily,  the Defendant is entitled to each witness statement after the

witness has completed his or her testimony on direct examination.  As the Court is

aware, this case/prosecution is highly complex with an extensive number of pages,

records, documents, transcripts etc.  It is respectfully requested by Defendant to obtain

"JENCKS" material at least two (2) months in advance of trial.

2.    Pursuant to Rule 26.2 of the Rules of Criminal Procedure, the *Jencks Act* is

applicable to pre-trial suppression hearings, sentencing hearings, revocation or modification of supervised release and probation hearings, detention hearings and preliminary examinations.

3.      The defendant moves for an order requiring production of *Jencks Act* materials, namely all statements and reports in the possession of the United States which were made by government witnesses or prospective government witnesses and which relate to the subject matter about which those witnesses may testify, as per the *Jencks* Act, 18 U.S.C. § 3500, and Rule 26.2, Federal Rules of Criminal Procedure.

4.      In addition to avoiding unnecessary delays, sufficient pre-trial delivery of *Jencks* material will insure that the Defendant's fundamental right to a fair trial and due process rights are safeguarded.  As stated herein, Defendant Jackson requests at least two (2) months in advance of trial for a receipt of 'JENCKS" material.

5.      Although a District Court may not ordinarily compel disclosure of *Jencks* material prior to the conclusion of a witness' direct examination, early disclosure of *Jencks* material obviates trial interruptions and permits defense counsel to study the disclosures and competently prepare for trial.  *See United States v. Campagnuolo*, 592 F.2d 852, 858 n.3 (5th Cir. 1979).

6.      In conjunction with the Defendant's request for early disclosure of *Jencks Act* material, the defense also requests that the Government provide a list of the witnesses it intends to call at trial.  See *United States v. Avellino*, 136 F.3d 249 (2d Cir. 1998). *See also, United States v. Cannone*, 528 F.2d 296, 300 (2d Cir. 1975)

7.      There is a particularized need for production of the Government's witness list in this case.   As stated, there is an extensive number of pages, records, documents and

reports. There are potentially many hours of audio involving extensive number of phone calls based on wiretaps.  There is a potential of at least fifty (50) witnesses who could be called by the prosecution. Moreover, there is no evidence of any danger involving subordination of perjury or intimidation of witnesses.

9.      Accordingly, it is respectfully requested that the Government be required to provide Defendant Jackson with early disclosure of Jencks material, but also with a list of anticipated witnesses and to update the list periodically as necessary.

**MOTION FOR DISCLOSURE OF EVIDENCE**
**PURSUANT TO FEDERAL RULES OF EVIDENCE**
**404(b), 608 AND 609**

**Federal Rule of Evidence 404(b)**

1.      Pursuant to Federal Rules of Criminal Procedure 12(b)(4), (d)(1) and (2) and Federal Rules of Evidence 104(a) and 404(b), Defendant Jackson respectfully requests that the Government notify him of any evidence that the Government contends would be admissible under Fed. R. Evid. 404(b).

2.      In order to permit the Defendant the opportunity to file appropriate motions prior to trial, he requests that he be fully apprized of "evidence of other crimes, wrongs, or acts" or transactions involving the Defendant which are outside the scope of the Indictment and which the Government will seek to introduce to demonstrate "motive, or absence of mistake or accident."   Fed. R. Evid. 404(b).

3.      The pretrial determination of this evidentiary question will serve the smooth operation of the trial, eliminate possible extraneous objections and assist both the Government and Deponent in the presentation of evidence.

**Federal Rule of Evidence 608**

4.      Defendant Jackson also requests, pursuant to Rules 608 and 609, pre-trial disclosure of any and all evidence the government intends to use to impeach the Defendant's credibility if he should choose to testify.   In the event the Government intends to use such evidence, the Defendant requests a pretrial hearing to determine the admissibility of such evidence.

5.      Due process also requires that such material be provided to the defense prior to trial to aid Mr. Jackson in deciding whether to proceed to trial or accept a plea.   The Second Circuit has suggested that this information should be produced at this stage in the proceedings.   *See United States v. Avellino*, 136 F.3d 249 (2d Cir. 1998).

**Federal Rule of Evidence 609**

6.      Rule 609 of the Federal Rules of Evidence allows for use of certain prior convictions to impeach the credibility of the Defendant should he testify at trial.   The defense requests notice of any intent to use such information.

**PRESERVATION OF ROUGH NOTES
AND REQUEST FOR *IN CAMERA* REVIEW**

1.      Defendant Jackson moves for an order of this Court requiring all Government agents and officers who participated in the investigation of the Defendant to retain and preserve all rough notes taken as part of their investigation, whether or not the contents of the notes are incorporated in official records.   This motion is made so that the trial court can determine whether disclosure of the notes is required under *Brady*, *Agurs, Giglio*, the *Jencks Act* (18 U.S.C. § 3500), Rule 26.2 of the Federal Rules of Criminal Procedure, and/or the Fifth and Sixth Amendments of the United States Constitution.

2.      The defense also requests that this Court direct the Government to preserve notes made by government witnesses, including state and local authorities, in the event they later became discoverable as either the Defendant's statement, or that of another witness.  *United States v. Scotti*, 47 F.3d 1237 (2d Cir. 1995).

3.      In the event it is doubtful whether such notes are subject to discovery, the Government should submit them to the Court for an *in camera* determination to determine whether they qualify as witness statements.  *Scotti*, 47 F.3d at 1249

### DISCLOSURE OF INFORMANT INFORMATION

1.      Upon review of the extensive discovery supplied, there are entries that confidential informants were used in this investigation. Accordingly, Defendant Jackson moves for disclosure of the names, addresses and criminal records of all informants utilized by the Government in its investigation of this case.

2.      In *Roviaro v. United States*, 353 U.S. 53 (1957), the Supreme Court held that a government informant's identity must be revealed where the defendant has demonstrated that disclosure is necessary to insure Mr. Jackson's right to a fair trial. Where the "disclosure of an informant's identity . . . is relevant and helpful to the defense of the accused, or is essential to a fair determination of a cause, the privilege [of non-disclosure] must give way."  *Id.* at 60-61.

3.      The information is also discoverable where the informant witnessed or participated in the criminal transaction.  *Id.*

4.      Disclosure of confidential informant information in this prosecution is essential to a fair determination of the charges filed against the Defendant.

## SEVERANCE OF DEFENDANTS

1.     This prosecution originated as an indictment charging thirteen (13) named defendants with conspiracy, possession and intent to distribute cocaine and fentanyl, and maintaining a place for manufacture and/or distribution of controlled substances. It is submitted that the co-defendants had a much more serious participation in the charges set forth in the Indictment. Accordingly, pursuant to Rules 12(b)(5) and 14 of the Federal Rules of Criminal Procedure, Mr. Jackson hereby moves to have his case severed from  the other co-defendants named in the instant Indictment.

2.     Mr. Jackson acknowledges that the hereinstated case involves a "conspiracy." Under Rule 8(b) of the Federal Rules of Criminal Procedure allows for joinder of defendants in the same indictment.   However, Rule 14 allows for severance and separate trials in appropriate cases.  Rule 14 provides:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.  In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.

3.     The Defendant will be severely prejudiced if compelled to go to trial with the named co-defendants.  Depending on suppression issues involving the co-defendants at the pre-trial stage, there may be a host of legal arguments, requiring severance of Defendant Jackson from the other co-defendants.

## MOTION TO JOIN IN MOTIONS MADE BY OTHER COUNSEL

1.     Deponent specifically requests that this Court allow counsel herein to join co-counsel in any arguments made orally and/or submitted on papers as if fully set forth herein that are not adverse to  Troy Jackson.

## MOTION TO SUPPRESS STATEMENTS TAKEN IN VIOLATION OF THE DEFENDANT'S FIFTH AND SIXTH AMENDMENT RIGHTS

1.     Upon review of the extensive voluntary discovery, it does not appear that Defendant Jackson has made any statements to law enforcement during or after his arrest. If statements were made, Mr. Jackson wishes to preserve and address the following:

      a. The Defendant was not properly advised of Miranda rights prior to his making a statement.

      b.  The Defendant was not given the opportunity to confer with legal counsel;

      c. The Defendant was not advised that he was a suspect in a criminal investigation;

      d. The Defendant was not advised that he was under arrest or in custody before the statement(s) was taken;

      e. The statement(s) was made in response to police questioning;

      f.  The statement(s) was involuntarily made; and/or

      g. The statement(s) was otherwise obtained in violation of the Defendant's rights under the Constitution of the United States.

## REQUEST FOR AUDIBILITY HEARING

1.   Defendant Jackson respectfully reserves the right to request an audibility hearing subject to listening to the various tapes (wiretaps) made in connection with this matter

and comparing the same to the transcripts prepared by the Government.

2.      That there are many conversations (wiretaps) that are difficult to hear and/or understand. Depending on which conversations (wiretaps) are going to be presented as evidence in trial, it is necessary for the Government to advise Deponent which conversations (wiretaps) will be presented as evidence.

3.      That Deponent will review said conversations (wiretaps) to determine if it is necessary to present additional motions or to file additional supplemental motions addressing audibility issues.


**MOTION FOR CONSPIRACY/JAMES HEARING**

1.      Defendant Jackson moves for an Order directing a pre-trial evidentiary hearing to determine the admissibility of any co-conspirator declarations which the Government intends to offer in this action.

2.      Upon review of the discovery, there are many statements that the Government may offer testimony regarding statements allegedly made by indicted and/or unindicted co-conspirators.

3.      Any such testimony would be highly prejudicial to Defendant Jackson in the context of this case.

4.      Defendant Jackson submits that it is essential that the Government demonstrate the admissibility of any co-conspirator declarations prior to trial.  Otherwise, serious and irreparable prejudice to the Defendant will result at the time of trial.

5.      Accordingly, it is necessary to conduct a hearing prior to trial to determine whether any co-conspirator declarations are admissible, and to avoid potential for

prejudice at the trial of this action.  See <u>United States vs James</u>, 590 F2d 575.

## SUPPRESSION OF IDENTIFICATION

1.    Among documents previously provided to your deponent in discovery, multiple reports have been prepared by law enforcement agents pertaining to identification of the co-defendants. However, there does not appear that there are any reports or records indicating an identification procedure used against Defendant Jackson. Nevertheless, an identification procedure had to have been used to identify the Defendant as a co-conspirator.

2.    If the Government does not concede that the identification of the Defendant was accomplished through an impermissible suggestive identification procedure, your Deponent requests that a hearing be conducted into the facts and circumstances surrounding the identification of Defendant.

## IN CAMERA REVIEW OF PRE-SENTENCE
## REPORT OF GOVERNMENT WITNESS

1.    The Defendant asks the Court to conduct an *in camera* review of the pre-sentence investigation report of any Government witness (who has been charged with Federal/State crimes)   to determine if such report contains exculpatory or impeachment material.  *See United States v. Moore*, 949 F.2d 68 (2d Cir. 1991) (when a co-defendant requests the pre-sentence report of an accomplice witness, the district court should examine the report *in camera* to determine if there are any statements made by the witness that contain exculpatory or impeachment material); *see also*, *Giglio v. United States*, 405 U.S. 150 (1982); *Brady v. Maryland*, 373 U.S. 83 (1963); *United States v.*

*Carreon*, 11 F.3d 1225 (5th Cir. 1994); *United States v. Wilson*, 930 F.2d 616 (8th Cir. 1990); *United States v. Trevino*, 556 F.2d 1265, 1271 n.7 (5th Cir. 1977); *United States v. Beckford*, 962 F. Supp. 780, 800 (E.D. Va. 1997).   This includes files of co-defendants.  *United States v. Gallagher*, 99 F.3d 329 (9th Cir. 1996).

2.     In support thereof, the defense has been advised that co-defendants have either pled guilty and/or agreed to testify on behalf of the Government and against Defendant Jackson. Mr. Jackson therefore submits that the prosecution is or will be in possession of multiple pre-sentence reports for co-defendants/Government witnesses who will testify against the Defendant at trial. The co-defendant witnesses will be key witnesses in the Government's case against the Defendant.

3.     Defense counsel has reason to believe that the pre-sentence investigation reports contain valuable impeachment evidence in that they contain statements of the co-defendants/Government witnesses that will detail their own criminal conduct relative to the conspiracy charged herein.

### SUPPRESSION OF EVIDENCE - WARRANT

1.     That a number of search warrants and tracking warrants were issued for execution on a residence and/or motor vehicles. Upon information and belief, after having reviewed discovery consisting of documents, reports, records and search warrants, there appears to be no evidence that Troy Jackson possessed any contraband relative to execution of the search warrants  and tracking warrants in the case at bar.

   (a)   Search warrants were executed at the following    properties:

            589 Etna Road, Ithaca, NY 14850

(b)    Search warrants were executed for the following vehicle:

2015 BMW-NY HZA-2060

(c)    Tracking warrants were also executed for the following vehicles:

2011 Black Infinity G37-NY HRL-4729
2018 Black Jaguar NY HYZ-3171
2014 Blue Chevrolet Equinox NY HPL-6232

2.   As stated above, deponent has reviewed many pages of documents. If additional search warrants were executed, and/or warrantless searches conducted, deponent respectfully wishes to amend the hereinstated to incorporate the additional property/vehicles that were searched.

3.     At this time, it appears that the Defendant is not an aggrieved person within the statutory contemplation of the search warrant statutes/law as no contraband was recovered from the execution of the number of search warrants that can be directly or indirectly connected to Defendant Jackson.   In any event, assuming that the Defendant is an aggrieved person within the statutory contemplation of the search warrant statutes/law and that some property, of illegal substance, was apprehended from  Mr. Jackson's person or property, the Defendant wishes to contest any and all executions of the search warrants, tracking warrants or warrantless searches, related to him with the below stated:

a. The search warrant(s) is facially, statutorily and jurisdictionally irregular;

b. The search warrant(s) provided no probable cause basis to believe that the list of items to be seized existed as to the Defendant; and

c. The language in the warrant(s) is effectively a broad unparticularized recitation of the items to be confiscated.

## SUPPRESSION - WIRETAP/ELECTRONIC EAVESDROPPING

1.     This  prosecution  resulted  from  an  investigation  involving  multiple  Law Enforcement  Agencies.  The  prosecution  intends  to  introduce,  at  trial,  statements Defendant Jackson allegedly made during telephone conversations that were obtained through  separate  wiretaps  of  various  telephone  numbers  stated  below.   Mr.  Jackson moves  to  suppress  the  use  at  the  trial  of  the  intercepted  communications  for  the following reasons:

> a. That law enforcement failed to exhaust other normal investigative techniques before obtaining the wiretap warrant and subsequent warrants;

> b. That law enforcement lacked probable cause to believe that criminal activity was taking place;

> c. That law enforcement failed to minimize phone calls;

> d. That law enforcement failed to properly seal in a timely fashion; and

> e. That evidence obtained through the wiretaps is the fruit of the poisonous tree.

2.   Further,  Defendant  maintains  that  he  is  an  "aggrieved  person"  as  defined  in  18 U.S.C.  §2510(11).   In  addition,  he  had  a  reasonable  expectation  of  privacy  in  the overheard  conversations  in  which  he  was  a  participant.   See  United Sates   v. Nersesian,  824  F.2d  1294(2d  Cir.  1987).   Also,  under  18  U.S.C.  §  2518(10)(a),  any person  who  has  had  communications  unlawfully  intercepted  can  move  to  have  the communication suppressed at trial.  United States v. Giordano, 416 U.S. 505(1974) and United States v. Bianco, 998 F.2d 1112 (2d Cir. (1993).   Therefore, Mr. Jackson has standing to challenge the legality of the court ordered interceptions. The investigation included the utilization of wiretap/eavesdropping warrants for the following telephone numbers during multiple months:

a.      (315)913-5508

b.      (315)329-1265

c.      (315)450-4559

d.      (315)412-8589

e.      (315)706-7529

f.      (315)263-6432

g.      (315)466-9958

h.      (315)247-4000

i.      (315)403-4752

j.      (315)247-0962

k.      (315)412-7542

l.      (315)414-9089

m.      (607)379-2901

3.      The conversations, if any, in which Defendant Troy Jackson, was a participant were intercepted during the execution of a series of the above stated eavesdrop warrants during the pendency of this investigation.

4.      It was alleged by the Government and Law Enforcement that the interceptions of the wire communications pursuant to the wiretap orders establish that Defendant, and all or some co-defendants set forth in the Indictment engaged in drug trafficking and other illegal activities in the Northern District of New York.   Allegedly, it was determined by Law Enforcement that Troy Jackson was a participant in the conspiracy consisting of the illegal activities set forth in the Indictment.

5.  As stated herein, there are a number of wire tap orders filed in connection with this

investigation.

6.  That the Affidavits signed by Law Enforcement and/or prosecutors are hearsay and boiler plate in nature  reiterating the "facts" of the investigators.

### Lack of Probable Cause

1.    That it is obvious that each eavesdropping application must provide probable cause to believe not only that certain individuals are involved in criminal activity, but that the particular target facilities will be utilized for communications relative to the commission of the narcotic offenses. See 18 USC §2518 (1)(b).  This section requires a full and complete statement of facts and circumstances to justify that the wiretap order(s) should be issued to conduct electronic surveillance on the targeted telephone numbers. The same arguments set forth herein can be made for the Extensions. Moreover, the Court was required to make a twofold probable cause determination that the particular targeted communications would be intercepted and that those communications would be over the target telephone facilities concerning the "offenses" obtained through the interception. See 18 USC §2518(3)(B) and (d).

2.     In the original wiretap application(s), the probable cause is alleged by Special Agent Ryan M. Phelan in stating that a number of co-defendants are involved in criminal activity. However, there is no proof or probable cause mentioned relative to Defendant Troy Jackson. The law enforcement officer specifically states that there is probable cause to believe that Daitwaun Fair, Michael Starkey, Brian McAlpine, Qualik Vaughn, Roosevelt Knight, Timothy Bowman, Michael Lopez and other individuals identified as SNU-LNU are committing either New York State or United States narcotics violations

3.     Based on the above stated, the law enforcement officer states that "there is

probable cause". to believe the above-stated co-defendants are violating State and/or Federal law but there is no probable cause related to Troy Jackson.

4.      Thereafter, alleging probable cause, law enforcement states that confidential informants used are reliable cooperating sources and information is "available to the Court upon request." There is nothing in any discovery documents disclosing if a magistrate requested "information: of the confidential informant".

5.      The reliability of information provided by an informant is assessed under the "totality of the circumstances" made known to the magistrate issuing a warrant. See Illinois vs Gates 462 US 213 (1983).  When an informant's identity is known to the magistrate, their credibility and reliability are again weighed under the totality of the circumstances.   However, law enforcement officers applying for the warrant must disclose known criminal history of the informant to the magistrate.  Failure to do so will clearly challenge the validity and reliability of the informants. See United States vs Hall 113 F3rd 157(9th Cir 1997).

6.      That pursuant to the affidavit(s) involving the hereinstated, there was no reliability established in the affidavit to analyze the "reliability". At this stage of the proceedings, it is pure speculation that law enforcement even advised the Court of the reliability of the confidential informants. Moreover, from a strictly practical analysis of the confidential informants, allegedly after this information was given to law enforcement, the affidavits do not set forth when Defendant Jackson was arrested. At this point, the confidential informants relative to Mr. Jackson are  "anonymous tipsters" which require independent "indicia" of reliability before law enforcement may reasonably rely on the "tipsters" account for probable cause. See Alabama vs White 496 US 325(1990)

7.      . That in order for an anonymous tip to serve as the basis for probable cause:

    a.       The tip must include a "range of details";

    b.       The tip cannot simply describe easily observed facts and conditions, but must predict the suspects future movements; and

    c.       The future movements must be corroborated by independent police observation.  See US vs Morales 252 F3rd 1070 (9th Circuit 2001)

8.      Moreover, information supporting the warrant must be current enough to demonstrate that probable cause exists at the time of the proposed search (wiretap).  In the case at bar, when was the confidential informant information given to law enforcement prior to the eavesdrop application/order.  Simply, the information from confidential informant(s) may be too dated to support probable cause and could be "stale" It is speculative upon reviewing the warrant applications when said information was transferred to law enforcement.

9.      Further, there is pure speculation that any alleged phone calls by the FNU-LNU are criminal in nature and related to Defendant Troy Jackson.  Whether communications were set forth either in phone calls or text messages, there is no proof that the Defendant was in fact the individual that communicated in the alleged innocuous phone calls.   As stated, a probable cause determination is based on the totality of the circumstances indicating that there is a probability of criminal activity taking place.  See Illinois v. Gates, Supra; United States v._Rowell, 903 F.2d 899, (2d Cir. 1990).  This standard also applies to wiretap warrants.   See Rowell, Supra; United States v. Nersesian, 824 F2d 1294 (2d Cir. 1987).  A wiretap warrant may be issued if there is probable cause to believe (1) that an individual was committing, had committed, or is about to commit a crime;(2) that communications concerning that crime will  be obtained

through the wiretap; and (3) that the phone to be wiretapped was being used for criminal purposes or about to be used or owned by the target of the wiretap.  Looking at the totality of the circumstances, it is submitted the issuing judicial officer lacked a substantial basis for a probable cause finding. The vast majority of all calls, theoretically related to Troy Jackson (if it is possible to establish) were innocuous at best, and based on pure speculation.

10.     Put simply, the multiple applications failed to provide the requisite probable cause showing with respect to the telephone(s) used by and/or listed to Defendant Jackson.  The Government has failed to adequately detail and establish probable cause for the multiple eavesdropping warrants issued.

**The evidence obtained through the wiretap authorization is the fruit of the poisonous tree**

1.     The evidence obtained through the wiretap warrants of the multiple phone numbers should also be suppressed because it is the fruit of the poisonous tree.  That is, it was obtained through the improper wiretaps of the first subject phone number (315) 913-5508 and the multiple extensions, and all subsequent wiretaps. It is well established that evidence obtained as a result of the exploitation of illegally or improperly obtained evidence should be suppressed if the taint of the improper evidence cannot be purged. In this case, the law enforcement failed to exhaust other normal investigative techniques before obtaining authorization to wiretap (315) 913-5508 and failed to establish probable cause in the originating affidavit.

2.     The threat posed by eavesdropping devices caused Congress to require law

enforcement to exhaust other normal investigatory techniques before obtaining judicial authorization to eavesdrop on an individual's telephone calls.   See 18 U.S.C. § 2518(1)(c); USA -vs- Kahn, 415 U.S. at 153.   Prior to obtaining a wiretap warrant, law enforcement are required to inform the authorizing judicial officer of the nature and progress of the investigation and the reason why other investigatory techniques would not be successful.   USA -vs- Vazquez, 605 F2d at 1282.   In obtaining the wiretap authorization for the hereinstated phone numbers, law enforcement failed to exhaust other investigative techniques and/or probable cause.  (See below stated arguments)

**Goals set forth in wiretap affidavits**

1.     The affidavit(s) of Special Agent Phelan sets forth that the goal of the investigation was:

        (a)     The distribution and possession with intent to distribute cocaine, cocaine base (crack cocaine), and marijuana in violation of 21 U.S.C. §841(a)(1);

        (b) Conspiracy to Commit and Attempts to Commit the aforementioned crime, in violation of 21 U.S.C. §846;

        (c) the Use of Communications Facilities in Furtherance of and to Facilitate the Distribution of Controlled Substances in violation of 21 U.S.C. §843(b);and

        (d) Aiding and Abetting the Offenses described above in violation of 18 U.S.C. §2.

2.     That law enforcement used the above-stated four (4) categories to address their "goal" stated above.  If the Court believed that the confidential informants were reliable and established probable cause, then their activities pursuant to drug buys have clearly established the "goals" of the wiretap order(s). Therefore, the Eavesdropping Warrant

was not necessary as the goals of law enforcement have been successfully completed.

3.      That the "goals" in the originating wiretap affidavit and subsequent application extensions addressed the following:

    a. To gather sufficient information to successfully arrest the co-defendants. Allegedly, confidential informants had "buys" with the co-defendants. Therefore, co-defendants could have been arrested.  This goal was obtained without an eavesdropping warrant(s);

    b. To identify other members of the drug distribution conspiracy. Confidential informants had allegedly made buys with other individuals thereby succeeding in identification of the co-conspirators.  This goal was obtained without an eavesdropping warrant(s);

    c. To obtain sufficient information to discover transaction meeting places. Confidential informant have allegedly met co-conspirators at numerous locations establishing sufficient information. This goal was obtained without an eavesdropping warrant(s);

    d. To identify the dates, locations, and facilities used by members of the drug conspiracy, to further their crimes. Confidential informants have allegedly gone to multiple locations for the drug buys/sales. This goal was obtained without an eavesdropping warrant(s);

    e. To identify the existence of any books, records, accounts, papers of the drug conspiracy operation. Confidential informants clearly established sufficient information for search warrants to be obtained in order to retrieve the hereinstated.  This goal was obtained without an eavesdropping warrant(s);

f.  To develop sufficient evidence to demonstrate probable cause. This goal would indicate that there was insufficient probable cause if one of their goals was to establish probable cause;

g.  To develop sufficient evidence to demonstrate probable cause that evidence which may be seized pursuant to a search warrant. As stated above, this goal would indicate that there was insufficient probable cause to warrant a lawful eavesdropping warrant;

h.  To ascertain the source or sources of their narcotics distributed by the network. Normal investigative techniques were successful in establishing this goal without requiring the eavesdropping warrant;

i.  To determine the amount and frequency of receipt and delivery of controlled substance. Normal investigative techniques with the confidential informants, surveillance, search warrants and grand jury proceedings would accomplish the hereinstated;

j.  To develop sufficient evidence to demonstrate probable cause. This goal established that probable cause did not exist for the wiretap orders; and

k.  It is the express goal of the investigation to stop, arrest, and convict the co-defendants. If the confidential informants were reliable, the co-defendants could have been arrested without the need for the originating wiretap order(s) and subsequent extensions.

4.  As stated herein, all the necessary information was established prior to not only the eavesdropping warrants being granted but also in regard to implicating the Defendant Troy Jackson in any criminal conduct. It appears, upon review of all of the

29

extensive discovery, that all discovery was directly related to the co-defendants and literally, no facts or circumstances relating to Defendant Troy Jackson.

**Necessity and failure to exhaust other normal investigative techniques**

1.      The Federal wiretap statute requires that each application for an eavesdrop warrant must contain a "full and complete statement" establishing that normal investigative procedures had been tried and failed, or that they appear reasonably unlikely to succeed.  18USC §2518(1), (C).  In the case at bar, all wiretap applications address the "exhaustion" of normal investigative techniques.  The originating wiretap application was for target telephone number one (315)913-5508.

2.      The use of eavesdropping devices pose one of the greatest threats to liberty. See Berger v. New York 388 U.S. 41 (1967).  Because of this, the police are not to routinely use wiretaps and other eavesdropping devices.   See United States v. Giordano, 416 U.S. 505 (1974) (stating that wiretapping and other eavesdropping procedures "were not to be routinely employed as the initial step in criminal investigation.") In order to reduce this threat, Congress requires law enforcement officers to exhaust other investigative techniques before seeking judicial authorization to install a wiretap.   18 U.S.C. § 2517(1)(c); United States  v. Kahn, 415 U.S. 143.  This requires police seeking authorization to install a wiretap to disclose the use, success, and potential success of other investigative techniques.  United States v Diaz, 176 F3d 52 (2d  Cir. 1999); United States v Miller 116 F3d 641 (2d Cir. 1997)  Officers are required to "inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement

methods."   United States v. Vazquez, 605 F2d 1269 (2d Cir. 1979).   As the panel in

Diaz noted, the issue "whether a normal investigative method has been exhausted must

be tested in a practical and common sense manner."

3.      In United States v Lilla, 699 F2d 99 2nd Cir. 1983, the Second  Circuit suppressed

the fruits of a New York State issued eavesdrop warrant.   In pertinent part, the Lilla

Court observed as follows:

> "(t)The requirement of a "full and complete statement" regarding procedures
> attempted or considered prior to the application for a wiretap serves both to underscore
> the desirability of using less intrusive procedures and to provide Courts with some
> indication of whether any efforts were made to avoid needless invasion of privacy.  Like
> other courts, we reject generalized and conclusury statements that other investigative
> procedures would prove unsuccessful" 699 F2d at 104.

4.      The Lilla Court also recognized the observation by the United States Supreme

Court that the necessity requirement is:

"simply designed to assure that wiretapping is not resorted to in situations where
traditional investigative techniques would suffice to expose the crime.  " See United
States v Kahn, 415 US 143, 699 F2d at 102.

5.      The Lilla Court went on to explicitly recognize that Congress had articulated a

preference for more conventional investigative techniques, such as informant infiltration,

physical surveillance, and pen registers.  699 F2d at 103.

6.      That pursuant to the affidavits prepared by law enforcement, conventional

investigative techniques were in fact successful.  Law enforcement conclusively stated

in their applications for the eavesdropping warrants, that normal investigative

procedures had been tried and failed or reasonably appeared unlikely to succeed if

tried.   However, confidential informants were successful in establishing drug buys,

allegedly with the co-defendants.  In fact, law enforcement were provided with valuable

information to assist in this investigation. Law enforcement had sufficient information to

arrest without proceeding further with either the eavesdropping warrants or extensions

on the wiretaps.

7.  Prior to the request for the hereinstated wiretap order(s) and subsequent extensions, law enforcement were successful in obtaining names of individuals involved as co-conspirators, locations of where drug transactions occurred, locations of "stash" houses, all through normal investigative law enforcement techniques.  There was clearly enough "information" to issue search warrants on residences and vehicles in order to succeed in the ultimate "goal" of arresting the co-defendants.

8.      It is respectfully submitted that the law enforcement originating and multiple applications for the eavesdrop warrants failed to establish any requisite necessity. Normal investigative procedures had been tried and were successful and appeared reasonably likely to succeed in the future.  It is submitted that law enforcement had many opportunities to satisfy their "goals" without proceeding to wiretaps.   If the Government wishes to argue that normal investigative procedures had been tried and failed, or appeared to reasonably be unlikely to succeed, then clearly, it is submitted that the warrants and applications were baseless as there was no probable cause to grant the original and further eavesdrop warrants for the multiple phone numbers and extensions stated herein.

9.  It is submitted that the Government failed to adequately detail that normal methods of investigative techniques failed, or were unlikely to succeed and as such, the applications and affidavits filed in support of these eavesdrop warrants were insufficient.

10.   Upon reviewing the affidavits presented to deponent in pre-trial discovery, law enforcement conducted: record checks on numerous co-conspirators; physical surveillance on numerous co-conspirators; interview of witnesses; was provided

"valuable" information from "reliable" confidential sources; consensual monitoring of conversations by the confidential informants on numerous co-conspirators; pen register(s); obtained  telephone records on numerous co-conspirators; and had access to other enforcement agencies in both Federal and State jurisdictions to connect criminal activity.    It is submitted, the Government completely failed to establish that they had exhausted the normal investigative techniques or that they were unlikely to succeed.

11.    Most importantly, it appears that Defendant Troy Jackson may have been the last individual connected to this conspiracy. Normal investigative techniques clearly established a successful investigation prior to the extension(s) of the wiretap order(s) implicating Defendant Troy Jackson.


**Minimization**


1.    At the time of the preparation of the Motions for the hereinstated relief, Defendant Jackson has not reviewed many hundreds of phone calls either through transcripts or audio tape calls.

1.    That it is not possible to address minimization issues without being apprised by the Government as to which of the hundreds (or thousands) of calls will be used in trial. Once the Government notifies Deponent of the "evidence" then he will be able to determine minimization issues

**Taint**

1.    In view of the electronic surveillance defects set forth above, the defense is now

entitled to full disclosure of any and all evidentiary materials derived from the illegal electronic surveillance.  See Alderman v United States 394 US 165; 18 USC §2518 (10)(a).

2.     Consequently, there should be a taint hearing to ascertain the full nature and extent of the illegal electronic surveillance.  See Nardone v United States 308 US 338. Further, the hereinstated wiretaps/electronic surveillance should be suppressed.


### UNSEAL REDACTED INFORMATION

1.     As stated, Defendant has received extensive discovery from the Government. However, documents, reports, records, statements, etc., have redacted information.

2.     The Defendant moves for disclosure of the documents for the following reasons:

     a.     To prepare for trial;

     b.     To prevent unfair surprises at the time of trial;

     c.     To ascertain which defenses are available.

3.     That due process requires that the defense be given this material in advance of trial so that investigatory leads may be pursued in sufficient time to permit a full preparation of Defendant's case.  Not unsealing the redacted material will result in ineffective representation.


### FURTHER RELIEF

1.     The Defendant respectfully reserves the right to make further and additional motions which may be necessitated by the Court's rulings on the relief sought herein.

2.      The specific requests contained in these motions are not meant to limit or preclude future requests by the Defendant for further relief from this Court as appropriate.

3.      The Defendant requests that this Court grant such other and further relief as is just and proper.


WHEREFORE, it is respectfully requested that the Court grant the Orders sought herein and, as stated, any further relief which to this Court may appear just and proper.


/S/ David R. Morabito

_____
David R. Morabito


/s/ Colette M. Gagnier
Notary
Sworn to me this 14th  day May 2019
Commission Expires 2/28/2021

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,


       -vs-


                                     Docket #  18-CR-427

TROY JACKSON,
                         Defendant
_____

## **CERTIFICATE OF SERVICE**

The undersigned certifies that he has a Law Office located at
 P.O. Box 187, 117 West Commercial Street, East Rochester, NY 14445.


On May 14, 2019, a Notice of Motion was served by electronic service by a CM/ECF to:

Clerk, United States District Court -NDNY
United States Attorney.



/S/ DRM
_____
      David R. Morabito



/s/ Colette M. Gagnier
_____
Notary  County of Monroe
Sworn to me this 14th  day of May 2019
Commission Expires 2/28/21